**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| CLARENCE HICKS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-25-03411 |
| WALLENIUS WILHELMSEN, *et al.*, | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

## MEMORANDUM OPINION

Plaintiff Clarence Hicks ("Plaintiff") has filed a Third Amended Complaint ("TAC") against Defendants Wallenius Wilhelmsen[1] ("WWL"), and its employees, April Domanski, Susan Collison,[2] and Justin Skunkwiler (collectively "Defendants"), asserting claims arising out of his former employment. ECF 45. Defendants have filed a motion to dismiss for failure to state a claim, ECF 46. Plaintiff opposed the motion, ECF 48, and Defendants filed a reply, ECF 49. Having carefully considered all of the filings, this Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the motion to dismiss will be granted.

## I. FACTUAL BACKGROUND

The facts below are derived from the TAC and taken in the light most favorable to Plaintiff, the non-moving party. Plaintiff worked for WWL as an Exotic Vehicle Paint Corrector and Polisher from April 2023 until June 2024. ECF 45 ¶ 4. On May 29, 2024, WWL's Floor

[1] The correct name for the defendant that Plaintiff intended to name is WWL Vehicle Services Americas, Inc. ECF 46-1 at 1. The Clerk will be directed to change the name on the docket.

[2] Similarly, the TAC names "Susan Collinson" as a defendant, but WWL's Human Resources ("HR") Manager is Susan Collison. ECF 46-1 n.2. The Clerk will be directed to change the name on the docket.

Supervisor, Defendant Skunkwiler, directed the Exotics Aston Martin team supervisor to send paint correctors to the McLaren automotive shop at the request of Jamie Lacey, a customer representative and vendor supervisor at McLaren.[3] *Id.* ¶ 10. Plaintiff's co-workers refused to go to McLaren because of prior unprofessional and racially hostile behavior by Lacey, *id.* ¶ 11, so Plaintiff went alone. *Id.* ¶ 12. When he arrived, he asked Lacey in private whether Lacey had used the 'N-word" when evicting other Black WWL polishers from his shop on a prior occasion. *Id.* Lacey responded, "I'm a n****r" and "I have black people in my family," while also "explicitly conceding that he considers all Black people to be that racial slur." *Id.* ¶ 13. Plaintiff responded "that Lacey's actions created unnecessary chaos and confusion." *Id.*

Plaintiff then returned to the Aston Martin shop, where he learned that Lacey had already reported the interaction to Skunkwiler. *Id.* ¶ 14. Skunkwiler demanded Plaintiff's side of the story and Plaintiff confirmed that Lacey had admitted using the racial slur. *Id.* Skunkwiler escalated the incident to his own supervisor, Operations Manager John Hess, who summoned Plaintiff to a meeting with executives of WWL and McLaren, including Defendants April Domanski, WWL's HR Executive, and Susan Collison, WWL's HR Manager. *Id.* ¶¶ 15–16. After hearing from Plaintiff, the McLaren executives immediately terminated Lacey's employment and the WWL executives sent Plaintiff back to work. *Id.* ¶ 16.

Two days later, a white WWL mechanic named Terry Grillo, who worked closely with Lacey in the McLaren shop, confronted Plaintiff about Lacey's firing. *Id.* ¶ 17. Grillo declared that Plaintiff "was permanently barred from entering the McLaren shop" because he had "got a good man fired." *Id.* Plaintiff asked Grillo if he knew the racial slurs Lacey had used and Grillo

[3] The TAC alleges conclusorily that Lacey "wielded operational control over WWL staff" without alleging any facts about Lacey's actions that might support that assertion. *Id.* ¶ 10.

"aggressively stated" that he did not care. *Id.* ¶ 18. Grillo reported the incident to Skunkwiler, who reported it to the HR Manager, Collison. *Id.* Collison interviewed Plaintiff and directed him to return to work. *Id.*

Later that day, two of Plaintiff's Black co-workers confronted Grillo about his hostility towards Plaintiff. *Id.* ¶ 19. One of the co-workers told Grillo "it seems you are racist if you are picking [Lacey's] side" and Grillo responded, "I guess I am racist then." *Id.*

After becoming aware of Grillo's statement to the two Black employees, Defendants Skunkwiler and Collison attempted to compel one of those two employees, Karon Woodard, to work alongside Grillo at the McLaren shop. *Id.* ¶ 20. Woodard refused. *Id.* ¶ 21. Grillo was not written up, suspended, or reprimanded. *Id.*

Several days later, Collison and Skunkwiler called Plaintiff and Woodard into the conference room and verbally informed them that they were suspended indefinitely. *Id.* ¶ 22. By letters dated June 13, 2024, Collison officially terminated the employment of both Plaintiff and Woodard. *Id.* ¶ 23. Plaintiff's letter stated that his actions with respect to Lacey "were unprofessional, disruptive, and perceived as bullying toward a vendor of" WWL. ECF 46-3 at 2. It further stated, "[s]pecifically, and validated through a company investigation, you created a hostile work environment when you confronted a [WWL] customer/McLaren representative. During this confrontation, our investigation determined that you used inappropriate and offensive racial slurs." *Id.* The letter explained that Plaintiff's actions had violated multiple provisions of the Employee Handbook, including prohibitions on "using profane, obscene, or other similar inappropriate conduct/language" and failing to "work in a cooperative manner with management/supervision, coworkers, customers and vendors." *Id.* Woodard's letter accused him

"of making 'patently false' and 'slanderous' racial allegations against management for reporting Grillo's conduct." ECF 45 ¶ 24.

Plaintiff filed a formal corporate grievance on June 25, 2024, and then a timely charge of discrimination with the EEOC. *Id.* ¶¶ 26–27; ECF 46-3 at 4. This lawsuit ensued.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); see also *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Md. Transit Admin*., 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Defendants attached two exhibits to their motion, Plaintiff's termination letter and his EEOC charge. ECF 46-3. As another judge of this Court has explained:

> As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage; however, it is a well-recognized exception to this rule that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached

> to a motion to dismiss if the document is "integral to the complaint and there is no dispute about the document's authenticity." *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A document is "integral" to the complaint if its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation marks omitted) (emphasis removed). Where the complaint shows that the plaintiff has adopted the contents of the documents attached to the complaint, "crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.

*Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021), *aff'd*, No. 21-2431, 2022 WL 17985700 (4th Cir. 2022) (unpublished per curiam opinion). Both of the exhibits here are referenced in and integral to the complaint and Plaintiff has not contested their authenticity. This Court will therefore consider both in adjudicating this motion without converting it to a summary judgment motion.

Because Plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civ. No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1997) (Luttig, J., concurring in judgment); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a self-represented plaintiff. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd. of Richmond*, 560

F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

## III. ANALYSIS

Plaintiff asserts three claims for relief: race discrimination in violation of Title VII and 42 U.S.C. § 1981 (Count One), retaliation in violation of those same provisions (Count Two), and hostile work environment (Count Three). ECF 46. Initially, this Court notes that the sole allegation against one of the named Defendants, April Domanski, is that she attended the meeting where McLaren terminated Lacey's employment. ECF 45 ¶ 16. Those facts do not state a plausible claim for discrimination, retaliation, or hostile work environment and all claims against Domanski will therefore be dismissed. The counts against the remaining Defendants will be addressed in order below.

### A. Discrimination

In Count I, Plaintiff alleges race-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. ECF 45 ¶¶ 28–33.[4] Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1).

To state a claim for status-based discrimination, a plaintiff may allege facts constituting direct evidence that his employer discriminated against him, *see Price v. Thompson*, 380 F.3d 209,

[4] "The elements required to establish a prima facie case [of discrimination] are the same under Title VII and Section 1981," thus the Court considers those claims together. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 n.1 (4th Cir. 2002).

212 (4th Cir. 2004), or he may offer other plausible evidence contributing to a prima facie case of discrimination by showing that he is a member of a protected class, that he was meeting the reasonable expectations of his employer, that he suffered an adverse employment action, and that he was treated differently from similarly situated employees outside the protected class. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Notably, in *Swierkiewicz v. Sorema*, the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," as requiring a plaintiff to do so would impose a "heightened pleading standard" at odds with the liberal pleading requirements mandated by Federal Rule of Civil Procedure 8(a)(2). 534 U.S. 506, 512, 515 (2002); *see* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . [and] a demand for the relief sought.").

Following *Swierkiewicz*, the Court clarified that although a plaintiff is not required to plead facts to support each element of a prima facie claim for employment discrimination, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding that, on a motion to dismiss, courts are not "bound to accept as true a legal conclusion couched as a factual allegation."). Thus, while Plaintiff is not required to plead facts to support a prima facie claim of discrimination, it must still be determined whether his Amended Complaint comports with the "ordinary rules for assessing the sufficiency of a complaint," *see Swierkiewicz*, 534 U.S. at 511, by pleading sufficient facts to plausibly support a claim of discrimination.

Plaintiff's contention, essentially, is that he and Woodard, who are Black, were terminated while Grillo, who was white, faced no consequences for admitting he was racist. He has not alleged facts, however, suggesting that Grillo is a valid comparator or that an inference of discrimination can be drawn because Grillo faced no consequences. As the Fourth Circuit has explained,

> A plaintiff is not required to identify a similarly situated white comparator to prove her discrimination claim, so long as she can establish an inference of unlawful discrimination through other means. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545–46 (4th Cir. 2003). We "may infer discriminatory intent from evidence of a general pattern of racial discrimination in the practices of a defendant." *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017). Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, however, "[t]he similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011) (internal quotation marks omitted).

*Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (per curiam), as amended (Aug. 11, 2017). Although the incidents Plaintiff alleged were all interrelated in that they occurred in sequence, the conduct attributed to Plaintiff (directly confronting a WWL vendor/customer about alleged racism) is qualitatively different from the conduct attributed to Grillo (stating "I guess I am racist then" to a WWL co-worker in response to an allegation of racism) and the conduct attributed to Woodard in the TAC (refusing to perform assigned work and making racial accusations against management). Plaintiff's conduct, as alleged in the TAC, was outward-facing in that it directly impacted WWL's relationship with an external company. Grillo's was not. Additionally, Grillo is alleged to be a mechanic that worked in the McLaren shop while Plaintiff is alleged to have been a polisher that worked regularly in the Aston Martin shop. It is unclear that they shared a supervisory chain such that an inference of discriminatory treatment

could be drawn from WWL's decision to dismiss one but not the other, even if there had been more commonality in their conduct. The similarity between the alleged comparators, then, is not "clearly established" as required to permit an inference of discrimination. Plaintiff's discrimination claim must be dismissed.

**B. Retaliation**

Count II of Plaintiff's TAC alleges claims for retaliation under Title VII and Section 1981. 42 U.S.C. § 2000e-3(a) prohibits employers from retaliating against employees who oppose their unlawful employment practices, such as prior discrimination. 42 U.S.C. § 2000e-3(a).[5] Retaliation requires evidence "(1) that [plaintiff] engaged in protected activity, (2) that the employer took a materially adverse action against him, and (3) [that] there is a causal connection between the protected activity and the adverse action." *Perkins v. Intern. Paper Co*., 936 F.3d 196, 213 (4th Cir. 2019).

Section 3(a) of Title VII, which addresses retaliation claims, defines a protected activity by referencing "oppos[ition] [to] any practice," or "participat[ion] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). In considering whether a plaintiff's action constitutes protected "opposition activity," the Fourth Circuit has stated that "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an *employer's* discriminatory activities." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (emphasis added); *see also id.* ("To determine whether an employee has engaged in legitimate opposition activity [courts balance] the purpose of the Act to protect persons engaging

[5] Because the elements of a prima facie Section 1981 and Title VII retaliation claim are "identical," this Court considers the claims together. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 n.5 (4th Cir. 2015).

reasonably in activities opposing discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.") (internal quotation marks and ellipsis omitted).

The issue with Plaintiff's retaliation claim is that he asserts that his protected activity was his complaint to Lacey about Lacey's prior use of a racial epithet and "confirming those facts during a corporate investigation." ECF 45 ¶ 35. Lacey did not work at WWL and was an outside vendor/customer at McLaren. Plaintiff's assertion that Lacey "wielded operational authority over WWL staff," *id.* ¶ 10, is unsupported by any factual allegations. He does not allege that Lacey had authority to hire, fire, or discipline WWL employees or that Lacey took any such actions following Plaintiff's complaint about his racial epithet. In fact, Plaintiff alleges that Lacey reported Plaintiff's confrontation to his supervisor at WWL, *id.* ¶ 14, undermining the conclusory assertion that Lacey wielded operational authority. Because Plaintiff has alleged no actions that he took "to bring attention to an *employer's* discriminatory activities," *Laughlin,* 149 F.3d at 259 (emphasis added), he has not alleged protected activity on which his retaliation claim can rest.

**C. Hostile Work Environment**

Finally, in Count III, Plaintiff alleges that Defendants subjected him to a hostile work environment, which exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citation and quotation marks omitted). To establish a claim under Title VII for a hostile work environment, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is

imputable to the employer." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (alteration and internal quotation marks omitted)).[6]

Plaintiff alleges no such conduct here. Taking his allegations as true, Plaintiff alleges that on a prior occasion, when Plaintiff was not present, Lacey (who is not a WWL employee), used a racial epithet against Plaintiff's coworkers. ECF 45 ¶ 12. Lacey then used the same racial epithet when talking with Plaintiff. *Id.* ¶ 13. As already discussed, however, the TAC offers no facts to establish that Lacey's conduct is properly imputable to his employer, WWL; instead, it conclusorily asserts only that Lacey "wielded operational authority over WWL staff." *Id.* ¶ 10. Plaintiff also alleges "subsequent retaliatory intimidation by a co-worker," ECF 45 ¶ 40, but the TAC expressly asserts that Grillo confronted him because he "got a good man fired," not because of his race. *Id.* ¶ 17. He has therefore failed to allege race-based conduct, imputable to his employer, that was sufficiently severe or pervasive to alter his conditions of employment, rendering his hostile work environment claim subject to dismissal.

**D. Individual Defendants**

For the reasons described above, the TAC does not state a viable claim against any Defendant on any legal theory. Additionally, however, Title VII does not permit individual liability because supervisors do not fall within the statute's definition of "employer." *Lissau v. Southern Food Serv. Inc.,* 159 F.3d 177, 178–81 (4th Cir. 1998). Accordingly, even if Plaintiff had otherwise stated claims, his Title VII claims against Skunkwiler, Domanski, and Collison would be dismissed. Those claims are therefore dismissed with prejudice.

---

[6] Because "the elements of a hostile work environment claim are the same under Title VII and [Section] 1981," this Court considers the claims together. *Alford v. Martin & Gass, Inc.*, 391 F. App'x 296, 302 (4th Cir. 2010).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 46, will be GRANTED. Plaintiff's Title VII claims against the individual defendants are dismissed with prejudice and the remaining claims are dismissed without prejudice, because Plaintiff is a self-represented litigant and this opinion constitutes the first substantive evaluation of the adequacy of his claims. This case will be closed, subject to reopening if Plaintiff, within thirty days, files a motion for leave to amend his complaint in compliance with the Local Rules. A separate Order follows.

Dated: October 6, 2026

/s/
Stephanie A. Gallagher
United States District Judge